**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**3:17-cv-513-FDW**

| | | |
|---|---|---|
| **RODNEY MONTGOMERY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **CHERRONE HARRIS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed

under 42 U.S.C. § 1983, (Doc. No. 1).  28 U.S.C. § 1915(e)(2).  Plaintiff has been granted in

forma pauperis status.  (Doc. No. 6).

## I.      BACKGROUND

Pro se Plaintiff Rodney Montgomery, a North Carolina inmate incarcerated at Maury

Correctional Institution in Maury, North Carolina, filed this action on August 22, 2017, pursuant

to 42 U.S.C. § 1983.  Plaintiff has named the following ten Defendants, all identified as

employees at Lanesboro Correctional Institution at all relevant times: (1) Cherrone Harris,

identified as a registered nurse; (2) Dennis Marshall, identified as a unit manager; (3) Kenneth

Beaver, identified as an assistant superintendent; (4) FNU Parker, identified as a correctional

officer; (5) FNU Bonner, identified as a correctional officer; (6) Leonard Stewart, identified as

an officer; (7) Terry Lemmon, identified as a sergeant; (8) Melisa Previtire, identified as an

officer; (9) Albert Lambert, identified as a correctional officer; and (10) FNU Morming,

identified as a staff member.  Plaintiff alleges that Defendants used excessive force against

Plaintiff in violation of Plaintiff's Eighth Amendment rights while he was incarcerated at

Lanesboro.  Plaintiff alleges the following facts to support his claim:

> On 12th of August 2013 I . . . was attending a disciplinary hearing while in full restraints.  During the hearing the disciplinary hearing officer told officer Leonard Stewart I spit on her.  Officer Stewart took hold to the full restraints wrist chains I was wearing and slung me onto the concrete floor.  Officer Stewart ran over to where I was laying and tripped over his own feet and fell on top of me, causing my neck to snap and my forehead to hit the concrete floor.  Officer Stewart began punching me in the head with his fist.  Then unit manager Dennis Marshall came into the hearing room with other officers and officer Stewart stated to the arriving officers, "You betta get him before I kill him."  The arriving officers were Dennis Marshall (unit manager), Officer Prince, Officer Parker, Officer Williams, Officer Mohl, Officer Bonner, Sergeant Horne, Sergeant T. Lemmon.  Unit manager Dennis Marshall kept screaming to me, "You're going to the hospital today."  Remove him from the cameras.  Dennis Marshall told officers to take me into a room office that was next door to the disciplinary conference room.  At this time officers punched and kicked me while in full restraints.  Unit manager Dennis Marshall order[ed] officers to lock me into a red holding cage.  A Nurse Harris visited me and made sarcastic remarks and mocked me regarding the use of force and refused to treat me.  While in the red holding cage Nurse Harris entered the room calling me someone else name and Nurse Harris stated to me, "You're not going to spit on me, are you?"  Then Nurse Harris made a back hand gesture, stating to me "You're alright."  And reference to the knot on my forehead to the officers with giggling of laughter.  Once Nurse Harris stepped into the hallway she hollered to the officers, "What is my name."  I never afforded an opportunity to say my name or tell her about my injuries.  I filed a DC-410 grievance complaint on these matters.  . . . .
> When I was removed from this holding cage unit manager Dennis Marshall came into the room with Officer Mr. Parker and Officer Bonner.  Officers used a soft hand escort and unit manager Dennis Marshall screamed to the officers to put me into a head and arm lock.  When this technique was used, Unit Manager Dennis Marshall screamed to the officers he wanted them to apply more pressure at this time I was still in full restraints.
> Officers applied their arms through my arms, through my arms and with their other arm applied pressure on the back of my neck and head.  I was tak[en] to my assigned cell H-13 and Officer Bonner threw me down on the steel bed frame all of my property had been removed along with mattress and bed linen.  I was held in full restraints for 3 days.  After the first 14 to 15 hours the nurses stopped checking on me and I was forced to urinate on myself, etc.  And I was not afforded to take care of my hygiene or stretch my extremities.  On these incident I filed several grievance complaints.  . . .
> On September 5, 2013, I was attending a disciplinary heating for a August 12, 2013, disciplinary offense.  Present during this video hearing were Sergeant

Lambert and Sergeant Terry Lemmon and another black staff member in civilian clothing by name of Mr. Morming. During the video hearing the disciplinary officer Pennell and myself was not on the same page and I was excused by the hearing officer and I immediately got up from the chair and proceeded to walk towards the door where Sergeant Terry Lemmon was standing, instead I was met by Sergeant Terry Lemmon with Sergeant Terry Lemmon initiating a physical confrontation against me by grabbing, twisting, and trying to bend my arms while I was in complete full restraints. Sergeant Terry Lemmon continued by raking my wrist with the full restraints black box I was wearing. At this time I was facing the door. The exit door was the kind of door with a high handle and had to be pulled open instead of pushing outward. With Sergeant Terry Lemmon pulling on the full restraints black box and turning me around. My first question to Sgt. Lemmon, "What are you doing?" Sgt. Lemmon and Sgt. Lemmon only continue[d] this aggressive behavior of pulling and twisting my arm finally getting his body under my body and flipping me over onto his back with me landing on the concrete floor hitting the right side of my head.

Sergeant Lemmon's head was beside my head and Sgt. Lemmon hit me with a forearm to the head. While lying on the floor I ask[ed] Sgt. Lemmon why did he just assault me. The very words that came out of his mouth. Sgt. Lemmon says to me, "You shouldn't have disrespected me." At this very moment Sergeant Albert Lambert joined in the assault by grabbing my leg and removing one of the shackles off my right ankle and tried to demonstrate some type of wrestling leg lock twisting my ankle. I asked Sergeant Lambert, "What is you doing?" Sgt. Lambert fell down awkward and put the leg iron shackle restraint back on my ankle. Sergeant Lemmon and Sgt. Kemmon "only" drug me up by the restraints I was wearing from the disciplinary hearing room to the "outside" recreational cage (over 50 yards). Sergeant Lambert trailed behind. Sergeant Terry Lemon throwed me down on the grounds and stated to me you won't spit on nobody else. I stayed outside on the ground for 6 hours until second shift came to work. Sgt. Ingram and Officer Hoyle took me back to my assigned cell and all of my personal property, mattress and bed linen had been removed.

On 2nd shift I had to get the attention of other inmates due to the full restraints were tangled up on my legs and the chain had gotten trapped between the bed frame and wall making it till I couldn't move and the leg restraints were clamped down high up on my legs. I was kept in full restraints for over 48 hours. The safety locks on the restraints was not secure. Nurse Franklin and Sergeant English had to untangle and unloosen the leg irons I was wearing. I filed over a docked DC-602 sick call complaints, received no treatment, wrote the Assistant Superintendent, no treatment was available according to the letter he wrote me.

(Doc. No. 1 at 5-11). Plaintiff seeks compensatory and punitive damages as well as declaratory relief. (Id. at 12).

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint

to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious

[or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore,

under § 1915A the Court must conduct an initial review and identify and dismiss the complaint,

or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which

relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an

indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such

as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989).

Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519,

520 (1972). However, the liberal construction requirement will not permit a district court to

ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable

under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

**III.    DISCUSSION**

Although Plaintiff has not identified his specific legal claims in his Complaint, he is

clearly attempting to raise an Eighth Amendment claim against Defendants, arising out of two

incidents of alleged excessive force—one occurring on August 12, 2013, and the other occurring

on September 5, 2013. He also appears to be bringing an Eighth Amendment claim for

deliberate indifference to serious needs as to at least Defendant Nurse Harris based on her refusal

to treat him for unspecified injuries after the August 12, 2013, incident.

Because there is no explicit statute of limitations for actions brought pursuant to 42

U.S.C. § 1983, courts look to the comparable statute of limitations from the relevant state.

Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 955 (4th Cir. 1995) (citing Wilson v.

4

Garcia, 471 U.S. 261, 266-69 (1985)).  Here, as noted, Plaintiff's Complaint cites two incidents

of alleged excessive force by various Defendants—one occurring on August 12, 2013, and the

next one occurring on September 5, 2013.  Plaintiff also appears to be bringing a claim for

deliberate indifference as least as to Defendant Nurse Harris, based on her refusal to treat him for

unspecified injuries after the August 2013 excessive force incident.  Plaintiff's excessive force

and deliberate indifference claims are similar to a claim for personal injury in North Carolina, for

which there is a three-year statute of limitations.  See N.C. GEN. STAT. § 1-52(16).   This Court

finds, therefore, that the applicable statute of limitations for Plaintiff's claims for excessive force

and deliberate indifference to serious medical needs is three years.  Accord Nat'l Adver. Co. v.

City of Raleigh, 947 F.2d 1158, 1161-62 (4th Cir. 1991).

Although the statutory limitations period for Section 1983 actions is borrowed from state

law, "[t]he time of accrual of a civil rights action is a question of federal law."  Cox v. Stanton,

529 F.2d 47, 50 (4th Cir. 1975).  "Federal law holds that the time of accrual is when plaintiff

knows or has reason to know of the injury which is the basis of the action."  Id.; see Urie v.

Thompson, 337 U.S. 163, 170 (1949) (noting that "statutes of limitations . . . conventionally

require the assertion of claims within a specified period of time after notice of the invasion of

legal rights"); Blanck v. McKeen, 707 F.2d 817, 819 (4th Cir. 1983) (noting that the statute of

limitations "does not begin to run until the plaintiff discovers, or by the exercise of due diligence

should have discovered, the facts forming the basis of his cause of action").

Plaintiff's excessive force claims accrued for the first excessive force incident on August

12, 2013, and then for the second excessive force incident on September 5, 2013.  Furthermore,

his deliberate indifference claim as to Defendant Nurse Harris for refusing to treat his on August

12, 2013, would have accrued on that date.  Plaintiff did not file this action until around four

5

years later, on August 22, 2017; thus, by Plaintiff's own allegations in the Complaint, Plaintiff's claim is clearly time-barred.[1] See Jones v. Bock, 549 U.S. 199, 215 (2007) (noting that in an initial review under § 1915(e) of the PLRA, "[i]f the allegations . . . show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ."); Bailey-El v. Hous. Auth. of Baltimore City, 686 F. App'x 228, 229 (4th Cir. 2017) ("A district court may dismiss a claim as time barred under Rule 12(b)(6) and § 1915(e)(2)(B)(ii) when the untimeliness of the claim is plain from the face of the complaint.").

## IV.    CONCLUSION

For the reasons stated herein, the Court will dismiss this action with prejudice as time-barred.

**IT IS, THEREFORE, ORDERED that:**

1.     Plaintiff's Complaint, (Doc. No. 1), is **DISMISSED**.

3.     The Clerk is respectfully instructed to terminate this action.

Signed: December 4, 2017

Frank D. Whitney
Chief United States District Judge

---

[1]  Aside from a single allegation about having a "knot on [his] forehead," Plaintiff also fails to allege facts showing what, if any, injuries he suffered as a result of the two alleged excessive force incidents. (Doc. No. 1 at 7).  The Court further notes that, aside from naming as a Defendant Melisa Previtire, identified as an officer at Lanesboro, Plaintiff does not allege any facts as to this named Defendant.